Kenneth W. Welsh, Jr.,  SBN 020953
J. Taylor Swick  SBN 028251
**WELSH LAW GROUP, PLC**
11811 North Tatum Boulevard, Suite 2350
Phoenix, AZ  85028
Telephone: (602) 569-0698
Facsimile:  (602) 595-0682
minuteentries@welshlawgroup.com
E-mail: Kwelsh@welshlawgroup.com  tswick@welshlawgroup.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adult Printed Diapers LLC,<br><br>            Plaintiff,<br><br>vs.<br><br>Rearz Incorporated, et al.,<br><br>            Defendants. | No. CV-18-00370-PHX-SMB<br><br>**PLAINTIFF ADULT PRINTED DIAPERS, LLC'S RESPONSE TO DEFENDANT COOSHIE TOOSHIEZ, LLC'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br><br>(Assigned to the Honorable Susan M. Brnovich) |

Plaintiff Adult Printed Diapers, LLC ("Plaintiff" or "APD"), by and through undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby responds to Defendant Cooshie Tooshiez, LLC's d/b/a/ Crown Diapers ("Cooshie") Motion for Summary Judgment. This Response is supported by the following Memorandum of Points and Authorities, and the Statement of Facts included herein as required by Court's Rule 16 Scheduling Order.

**Plaintiff's Statement of Facts and Responses to Cooshie's "Undisputed Facts"**

Plaintiff filed its Compliant against eight original Defendants that do business as diaper companies. These companies were originally added after Plaintiff's investigation

**WELSH LAW GROUP, PLC**

found that these eight diaper brands were buying Plaintiff's trademarked and copyrighted products from, or in connection with, one of the defendants named Rearz at its website Rearz.ca. After this investigation determined that these companies had connection to Rearz and were working to sell Plaintiff's diapers through Rearz as its distributors, Plaintiff informed each company that they were officially distributing Plaintiff's Teddy Bear printed Aww So Cute branded diapers and then reselling them against Plaintiff's legal and intellectual property rights.

It came to Plaintiff's attention that Rearz and the other defendants bought Plaintiff's products from its manufacturer overseas and imported them into Canada and the United States. Plaintiff was then able to determine that Cooshie is a United States distributor for Rearz and its products. Plaintiff also discovered that the defendants, including Cooshie, then distributed these diapers through multiple websites in Canada and the United States, as is shown in various photos and postings from these websites and from buyers, attached as exhibits hereto. From information determined by Plaintiff, the defendants then also sold Plaintiff's diapers to medical supply stores, on eBay, and through Craigslist after having bought these products from China so that they could sell them to all of these downstream distributors.

After Plaintiff filed its suit in this Court against all Defendants, it possessed and still does possess information and belief as to the ways in which each Defendant had made certain business decisions and participated in certain acts that arose to the level of violating the enumerated rights of Plaintiff in this matter.  Shortly after being named and served in this matter, Cooshie requested that it be removed as a Defendant, simply sending declarations of some of its representatives in an attempt to claim that it was not at fault for the various allegations as filed against it.  In response to these declarations, Plaintiff's previous counsel sent an email stating that it "will not dismiss Cooshie Tooshiez based

///

2

**WELSH LAW GROUP, PLC**

merely on a declaration from representatives of [Cooshie]. If [Cooshie] wants to deny the allegations in the complaint, they should file an answer and allow us to depose them."

Plaintiff originally brought this matter against Cooshie because it has acted as one of many downstream sellers for Rearz. The model operated such that Rearz acted as the kingpin company in a large-scale ring of illegal sales of Plaintiff's intellectually-protected Aww So Cute diapers and where the other defendants were its purported dealers of these products. Here, Cooshie made itself out to be an authorized distributor of Plaintiff and its branded, protected products, which it and the other defendants never have been.

Plaintiff did its due diligence through a large-scale internal investigation of the actions of Cooshie and its connection to Rearz as a claimed authorized distributor. Plaintiff does admit that it did not know everything about the scale of this orchestrated model of selling Plaintiff's diapers without permission from Plaintiff, and it also admits that it may never know the full-scale of this scheme, but that is not a reason to grant Cooshie's Motion for Summary Judgement.  Cooshie's attempt to mask and conceal its actions should not preclude Plaintiff from proceeding to trial against Cooshie. Instead, Plaintiff should be able to present it claims at trial.

Plaintiff disagrees with the contentions in Cooshie's section named "Undisputed Facts" and therefore requests that the Court not regard such statements as "undisputed". The "facts" as identified by Cooshie are self-serving, inaccurate and compiled in such a way as to confuse and mislead. Cooshie claims throughout its Motion for Summary Judgement that Plaintiff never produced any evidence that can connect it to Plaintiff and the illegal sale of its goods.  This statement by Cooshie is completely improper as is shown in Plaintiff's initial disclosures and the attachments hereto.  For example, in a page disclosed from Cooshie's own website, Cooshie includes the following information about its business: "FAQ: ...In some instances **our supplier Rearz in Canada** will drop ship items we do not have in stock so we can continue to serve our customers...." (boldface

3

type added for emphasis). (Cooshie's Ex. 4, pg. 11; Ex. 1). Cooshie does not describe Rearz as "one of its suppliers" or "a supplier," but as "our supplier Rearz in Canada" which indicates that Cooshie has one Canadian distributor and that is Rearz.  As a part of the larger claims against all Defendants in this case, Plaintiff has alleged and provided documentation to show that Rearz purchased Plaintiff's products from Plaintiff's manufacturer in China, and that Rearz even fully admits to having done so in this matter. (Ex. Rearz MSJ pg. 11, lines 12-15) This first step in the chain of sales therefore is an issue that must be heard at trial, since it clearly creates an issue of material fact related to Cooshie.

For Cooshie, the next step is to demonstrate that it does business with Rearz as its distributor.   Plaintiff has shown this connection through Cooshie's own website as previously disclosed by Plaintiff.  (Cooshie Ex. 4, pgs. 5 through 12, Ex. 2). This alone establishes a question of fact, ample to keep Cooshie in this matter as a Defendant and for Plaintiff to go to trial against Cooshie. If, however more evidence is needed against Cooshie, Plaintiff also presents the following factual arguments and attached exhibits to prove that Cooshie should not be dismissed from this case.

<u>**Legal Standard**</u>

**I.     Standard for Summary Judgment**

Summary judgment is only an appropriate remedy, if the Court, after receipt of evidence and viewing it in a light most favorable to the party that opposes the motion, "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986). A genuine issue of material fact is found if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Here, Cooshie has not provided evidence that removes all genuine issues of material fact.  Instead, Cooshie, through its arguments,

actually creates more issues of material fact than it does to prove a complete lack thereof, as demonstrated in the below listed arguments presented by Cooshie, and through Plaintiff's use of its exhibits and the affidavit of Steve Pandi.

## II.       Plaintiff Does Not Rely on Evidence Not Properly Disclosed

In this case, Plaintiff has timely disclosed evidence, both of Cooshie's connection to Rearz and of the sales of Plaintiff's products as parts of Rearz' "mystery boxes" sold in the United States.  This evidence is shown in screen grabs from Cooshie's own website as well as through various comments from clients who had purchased Rearz mystery boxes in the United States through Cooshie and who were confused as to how they were receiving Plaintiff's products as parts of these mystery boxes. (Ex. 4; Cooshie Ex. 4, pgs. 5 through 12, Ex. 2). Also, Plaintiff has supplemented these previous, timely disclosures by attaching an Affidavit of Steve Pandi to this Response in order to further provide the Court with evidence of Cooshie's involvement with Rearz. (Ex. 1). Finally, and in relation to the statements made in Pandi's affidavit, Plaintiff now attaches additional exhibits to this Response. These are images found by Plaintiff to respond to the issues presented by Cooshie in its Motion for Summary Judgment. (Ex. 2 and 3).  Each and every form of disclosed document and affidavit mentioned above complies with case law and the Civil Rules of Procedure for disclosures as demonstrated below.

Plaintiff believes that Cooshie will attempt to object to Plaintiff's use and disclosure of a personal affidavit as an exhibit for this Response. Plaintiff's affidavit is however a proper inclusion in a Response to a Motion for Summary Judgement.  The Federal Rules of Civil Procedure and the Arizona Court of Appeals both determine that "an affidavit submitted in opposition to a summary judgment motion 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" Tilley v. Delci, 220 Ariz. 233, 236 (2009); Fed. R. Civ. P. 56(c)(4); see also GM

Dev. Corp. v. Community Am. Mortgage Corp., 165 Ariz. 1, 7, 795 P.2d 827, 833 (App.1990). Here Pandi's affidavit is clearly from his own, personal knowledge, is admissible, is generated through his competent memory of the facts leading up to the filing of this case, and is therefore correctly submitted to support Plaintiff's Response.

Secondly, Plaintiff believes that Cooshie will object to the use of any newly discovered evidence as exhibits to this Response. However, newly discovered evidence is permissible for the purpose of supporting a Response to a Motion for Summary Judgment. In fact, when weighing the evidence produced by both parties related to a Motion for Summary Judgment, a court simply must decide "whether there is sufficient evidence to submit an issue to the jury"… and that the court "need look only to the evidence and reasonable inferences which tend to support the case of a litigant against whom a peremptory instruction has been given." *Webb v. Illinois Cent. R. Co.*, 352 U.S. 512, 513-514 (1957).  In Arizona, "a party opposing a motion for summary judgment must show that evidence is available which would justify a trial of that issue." *Hunter v. Benchimol*, 123 Ariz. 516, 601 P.2d 279 (1979); *see also Crocker v. Crocker*, 103 Ariz. 497, 446 P.2d 226 (1968). 118 Ariz. at 86, 574 P.2d at 1305.

It is clear that courts recognize the distinct need for a party, which has had a motion for summary judgment filed against it, to be able to defend its position through the disclosure of evidence at the time of its response to the motion.  Without having the opportunity to produce evidence, Plaintiff would not be able to respond to new arguments brought by Cooshie in its Motion for Summary Judgment and without this opportunity, Plaintiff faces severe disadvantage.

As stated above, and which is the prevailing view in Arizona, "[i]n determining whether summary judgment is appropriate, the Court will consider the facts in a light most favorable to the party against whom the motion was granted. *Id.; see also Pendleton v. Cilley*, 118 Ariz. 84, 574 P.2d 1303 (1978). To restrict the use of newly discovered

evidence in Plaintiff's Response would not create a light most favorable to Plaintiff and also would prevent the Court from reviewing all evidence it needs in ruling on the Motion for Summary Judgment.

### III. Plaintiff's Trademark Infringement Claim Does Not Fail as a Matter of Law

One primary argument of Cooshie in its Motion is that Plaintiff cannot protect its trademark rights and therefore cannot bring a cause of action against Cooshie for trademark infringement. This argument alone creates the needed genuine issue of material fact for Plaintiff to overcome the Motion for Summary Judgement. As a part of its claim, Cooshie makes the argument that Plaintiff must show "(1) a valid protectable trademark and (2) defendant's use of the mark is likely to cause confusion." *Moab Industries, LLC v. FCA US, LLC,* No. 3:12 cv 8247-HRH, 2016 WL 5859700 at *3 (Oct. 6, 2016). This standard of law should not even be determined as a part of a Motion for Summary Judgement. Since the second element of the above referenced test is the likelihood to cause confusion, Cooshie is asking the Court to determine a genuine issue of material fact as a part of its determinations for the Motion for Summary Judgment. This issue should lead to the full dismissal of Cooshie's Motion as a threshold matter. In fact, the Ninth Circuit has held that it has "cautioned that district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002) (citing *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001); Interstellar, 184 F.3d at 1109). Rather than allowing Cooshie's Motion for Summary Judgment, this major issue must instead be determined at trial. For this reason alone, Cooshie's Motion must be denied and all matters requiring a full record must be litigated at trial. This is the case

"[b]ecause the likelihood of confusion is often a fact-intensive inquiry [and], courts are generally reluctant to decide this issue at the summary judgment stage." *Id.*; *see also*, *Au–Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,* 457 F.3d 1062, 1075 (9th Cir.2006) (citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir.2002)); and *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1029, 1039 (9th Cir.2010).

### IV.     Cooshie Has No Goodwill and Cannot Properly Sell Plaintiff's Products

Cooshie is also in violation of trademark law because it does not have Plaintiff's goodwill that goes with Plaintiff's trademark of its own product. This is because a trademark owner develops the reputation associated with the products and therefore is the only entity with the goodwill that comes from selling its products. *Menendez v. Holt*, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526. It then follows, since rights in trademark come from both the mark itself and the goodwill associated with that mark, that the owner of the mark must combine the goodwill of the business with the sale of the trademarked products. *Eiseman v. Schiffer*, 157 Fed. 473 (holding that products can only be sold combined with the goodwill of the Plaintiff's business that it has bought). Based on this reasoning, Cooshie, which has no goodwill from owning the mark and selling the products, along with Rearz, is unable to sell Plaintiff's products in competition with Plaintiff.

### V.     Confusion in Sponsorship of Plaintiff's Products Exists from Cooshie's Sales

Cooshie is not protected from infringing Plaintiff's mark because it improperly bought or assisted in the purchase and importation of Plaintiff's products contrary to Plaintiff's wishes, and then helped to sell these products in the United States. Courts have held instead that even the purchase and resale of "genuine" products can cause confusion because consumers will be confused as to the sponsorship of those products sold by the

infringing party. *Babbit Electronics, Inc. v. Dynascan Corp.*, 828 F.Supp. 944, 956–957 (S.D.Fla.1993) (holding that "identical goods sold in an unauthorized manner are not necessarily genuine for purposes of the Lanham Act"); *see also Hunting World, Inc. v. Reboans, Inc.*, 24 U.S.P.Q.2d 1844, 1849, 1992 WL 361741 (N.D.Ca.1992), *citing, H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1023 (2nd Cir.1989); *see Ballet Makers v. United States Shoe Corp.*, 633 F.Supp. 1328, 1331 (S.D.N.Y.1986); *and Disenos Artisticos E Industriales, S.A. v. Work*, 676 F.Supp. 1254, 1269 (E.D.N.Y.1987) (holding that "even if there were no possibility of confusion as to source of origin when a product is 'genuine,' there might still be confusion as to sponsorship when a 'genuine' product is manufactured by a foreign manufacturer but distributed in the U.S. without the authorization of and in competition with the U.S. trademark owner").

## VI.   Plaintiff Cleary has Shown that it has a Copyright that was Infringed

As Cooshie admits, Plaintiff has shown a valid copyright registration for its diaper designs.  (Cooshie Ex. 12). Even if Cooshie does claim that it is somehow protected by the first sale doctrine for illegally purchasing Plaintiff's copyrighted (and trademarked) products without Plaintiff's agreement, this is incorrect under the *Givenchy* holding and its connection to the findings in *Katzel*. *Givenchy* at 484. The Katzel import protection is basically the same as the Copyright Act, such that U.S. companies can sue third parties for importing lawfully obtained foreign manufactured goods without the authorization of the company in America. *Id.* It is clear that the *Givenchy* holding is the appropriate one here instead of any analysis related to the first sale doctrine. Cooshie only claims that Plaintiff has not demonstrated that it ever did anything with regard to Plaintiff's products.  Now that Plaintiff has established that Cooshie has, at the most minimal level, helped Rearz to import Plaintiff's products into the United States and Canada for sale, Cooshie does violate Plainitff's copyrights. There is no excuse for Cooshie's actions, nor does it relate to ///

**WELSH LAW GROUP, PLC**

any claim that Cooshie could therefore legally sell out from under Plaintiff any items that were its copyright protected materials.

### VII.   Plaintiff's Claim for Tortious Interference does not Fail as a Matter of Law

For Plaintiff to show that there was tortious interference with a business expectancy it must show that it has a valid business expectancy.  This business expectancy is established simply by the fact that Plaintiff had contracted to have Mimosa produce diapers for it and that these diapers were being sold by Plaintiff to gain economic benefit as reflected in Plaintiff's yearly income figures. (Ex. 5 and Rearz Ex. 3). Also, Plaintiff needs to show that Cooshie knew about its business expectancy; this is demonstrated in Cooshie acting as the American distributor of Plaintiff's products for Rearz and through Rearz, fully admitting to having purchased these diapers from Mimosa.  (Rearz MSJ pg. 3, lines 22-23). It therefore becomes immediately clear that Cooshie intentionally caused termination of Plaintiff's business expectancy simply by knowing that it possessed Plaintiff's products that had been illegally purchased from Plaintiff's manufacturer and/or importing those products into the United States for sale in its own store and online.  When a party purchases the products of another party, it is clear that both parties cannot receive the benefit of the purchased goods.  Plaintiff clearly could not sell any diaper purchased by Rearz and/or Cooshie and then resold, since Cooshie possessed the products instead of Plaintiff. Finally, as is shown in the affidavit of Steve Pandi, each diaper that Plaintiff sells is sold for approximately $2.00 and since Rearz purchased approximately 80,000 of Plaintiff's diapers, Plaintiff therefore has suffered $160,000 in damages. (Ex. 1). Also, Plaintiff's damages stem from the approximately eight to nine months that Plaintiff lost its opportunities to purchase products from any manufacturer, plus Cooshie having redirected Plaintiff's own clients from purchasing from Plaintiff to then purchasing from Cooshie. (Ex. 1).  For these reasons, Plaintiff's claim for tortious interference with business

expectancy does not fail as a matter of law and Plaintiff should instead recover its damages at trial.

### VIII.   Plaintiff's Conversion Claim Does not Fail as a Matter of Law

The only argument that Cooshie relies on for its assertion that Plaintiff's conversion claim should fail as a matter of law is that it believes that no conversion happened because of its claim that Plaintiff has no protectable intellectual property interests. As shown above, Plaintiff has both a protectable trademark and copyright over its products, and the diapers produced because of a contractual relationship between Plaintiff and Mimosa were not products that Cooshie or Rearz had any right to purchase from Mimosa at any time, even if it is believed that Plaintiff ever terminated its business relationship with Mimosa. (Ex. 1). Also as stated above, this conversion clearly harmed Plaintiff in the approximate amount of $160,000 since Plaintiff no longer had ability to sell its products. (Ex. 1).

### IX.   Plaintiff and Cooshie Both have Proved Plaintiff's Unjust Enrichment Claim

Cooshie's own admissions in its Motion for Summary Judgement demonstrate that it enriched its own position by, at least, helping to purchase and import Plaintiff's protected goods from Plaintiff's manufacturer. This point is demonstrated through Plaintiff's disclosures of its financial harm suffered in 2017, the same year that Rearz and Cooshie bought Plaintiff's supply of diapers on June 26, 2017. (Rearz Ex. 5). This is also a direct connection to Plaintiff's shown reduction in sales from $146,767.16 in 2016 to $89,997.46 in 2017, (Ex. 1; Rearz Ex. 3). Finally, since all of the products bought by Rearz and Cooshie and then brought to the United States were the property of Plaintiff—both through a contractual relationship with Mimosa, and through the protectable intellectual property rights that Plaintiff still has on these products to this date—there is no justification in the law that Cooshie can allege to overcome Plaintiff's rights. Plaintiff can only be made whole again through a reversal of this unjust enrichment, because return of

**WELSH LAW GROUP, PLC**

the diapers that Cooshie helped to sell in the United States is impossible and because the time of deprivation of Plaintiff's products has also led Plaintiff to lose money and sales.

### X.    Plaintiff, and Not Cooshie, is Entitled to Costs and Attorneys' Fees

Pursuant to 17 U.S.C. § 505, Plaintiff should be awarded attorneys' fees as the prevailing party in responding to Cooshie's Motion for Summary Judgement.   Also, pursuant to 28 U.S.C. § 1927, Plaintiff should be sanctions where Cooshie's only intent to file its motion was to distract the proceedings in this matter from the real facts in bad faith. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Plaintiff should be awarded its fees and costs against Cooshie and its counsel for purposefully misleading the Court and multiplying the proceedings in this case in the lead up to trial. *Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1218-19 (9th Cir. 2010) (citing 28 U.S.C. § 1927).

As Plaintiff has shown in this Response, Cooshie's claims that it has never worked with Rearz related to Plaintiff's products is simply a fabrication used to distract the Court from the actual issues at hand.  Since Plaintiff has now demonstrated both that it does have protectable intellectual property rights, and that there are genuine issues of material fact that should go to trial in this matter, it and not Cooshie should be awarded reasonable costs and attorneys' fees for having to respond to Cooshie's Motion for Summary Judgment.

### Conclusion

For the reasons stated above, Plaintiff asks the Court to deny Cooshie's Motion for Summary Judgement in the entirety, and to find that Plaintiff's case against Cooshie can continue to trial. Plaintiff asks the Court to find that it successfully demonstrated that multiple issues of material fact exist and therefore that proceeding to trial is required. Plaintiff finally requests that Plaintiff be awarded it reasonable costs and attorneys' fees.

///

///

12

**WELSH LAW GROUP, PLC**

1        DATED this 15th day of July 2019.

2

3                                      WELSH LAW GROUP, PLC

4                              By  */s/ J. Taylor Swick*

5                                      Kenneth W. Welsh, Jr.

6                                      J. Taylor Swick
                                       *Attorneys for Plaintiff*

7

8    ORIGINAL filed and a copy of
     the foregoing mailed July 15,

9    2019 to:

10   Anderson J. Duff, Esq.
     Revision Legal PLLC- New York, NY
     244 5th Ave., Suite 2230

11   New York, NY 10001
     anderson@revisionlegal.com

12   *Attorneys for Rearz Incorporated
     and Cooshie Tooshiez LLC*

13

14   Kenneth Michael Motolenich-Salas, Esq.
     MotoSalas Law PLLC

15   16210 North 63rd Street
     Scottsdale, AZ 85254

16   ken@motosaslaw.com
     *Attorneys for Rearz Incorporated*

17

18     */s/ Kendrick Stallings*

19

20

21

22

23

24

25

26

                                      13

**WELSH LAW GROUP, PLC**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Adult Printed Diapers LLC,

           Plaintiff,

    vs.

Rearz Incorporated, et al.,

           Defendants.

No. CV-18-00370-PHX-SMB

**PLAINTIFF ADULT PRINTED DIAPERS, LLC'S EXHIBITS 1 THROUGH 5**

(Assigned to the Honorable Susan M. Brnovich)

1. Affidavit of Steve Pandi.
2. Photograph of Cooshie as distributor for Rearz from Cooshie's website.
3. Photograph of Cooshie distributing for Rearz.
4. Images of messages and photographs of Cooshie's customers in the United States buying Rearz products.
5. Contract between Plaintiff and Mimosa Factory.

# EXHIBIT 1

Kenneth W. Welsh, Jr.,  SBN 020953
J. Taylor Swick  SBN 028251
**WELSH LAW GROUP, PLC**
11811 North Tatum Boulevard, Suite 2350
Phoenix, AZ  85028
Telephone: (602) 569-0698
Facsimile:  (602) 595-0682
minuteentries@welshlawgroup.com
E-mail: Kwelsh@welshlawgroup.com  tswick@welshlawgroup.com
Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| Adult Printed Diapers LLC, | No. CV-18-00370-PHX-SMB |
|---|---|
| Plaintiff, | |
| vs. | **AFFIDAVIT OF STEVE PANDI IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT COOSHIE TOOSHIEZ' MOTION FOR SUMMARY JUDGMENT** |
| Rearz Incorporated, et al., | |
| Defendants. | |
| | (Assigned to the Honorable Susan M. Brnovich) |

I, Steve Pandi, being first duly sworn upon my oath, depose and say:

1. I, Steve Pandi, have personal knowledge of the facts set forth herein.

2. I am the production manager, who handles design and overseas product production and am also the distribution manager and product marketer of Adult Printed Diapers LLC ("APD"), and was during the timeframe of the events underlying this lawsuit.

3. I also was the owner of Aww So Cute, Inc. ("ASC"), the predecessor company in all rights that were later assigned to Adult Printed Diapers LLC.

4. Starting in about 2014 and continuing through 2015, Mimosa Factory ("Mimosa") began producing trademark and copyright protected diapers for the Aww SO Cute brand. It is my understanding that they produced over 120,000 pieces during the time it produced products for ASC and/or APD.

5. Mimosa constantly over-produced the contracted for amounts of products we ordered from them in an effort to entice us to purchase additional units of products at discounted rates. Mimosa also said they would store the product in their warehouse and then allowed ASC and APD to obtain the needed quantities of products out of these larger orders every three to six months from the stored inventory.

6. On about January to February of 2015, I reviewed a batch of products manufactured by Mimosa where there was a problem with the artwork colors, which Mimosa had not printed properly. On this batch, all places where pink was to be printed instead looked peach.

7. Soon after the printing issue with colors, I also came to understand that some tape on the diapers that were in that same batch were not the quality required by us and were not sticking. This led to us rejecting this batch of products.

8. In approximately the end of 2015 or the beginning of 2016, I requested that Mimosa reprint these products.  This request caused a disagreement between APD and Mimosa.

9. At no time did I or either ASC or APD knowingly approve any of the damaged, misprinted or lesser-quality products in any marketplace. Not until some customers had had sent us information about lesser quality fasteners and diaper material on a batch of products produced through Mimosa Factory did we have to both rectify this issue with customers and also go to Mimosa Factory to have this batch re-produced to our original standards.

10. In approximately February or March of 2016, I had a phone conversation with my contact at the Mimosa Factory, and my contact said that a competitor had called Mimosa Factory to inform them that "Aww So Cute or Steve Pandi was involved in Bankruptcy or financial trouble". It was clear that this statement was concerning to my contact and this was the beginning of the deterioration of APD's relationship with Mimosa.

11. Shortly after March of 2016, the Mimosa Factory stopped communicating with me, or anyone at APD, and I was unable to obtain any more of the APD diapers previously ordered and paid for.

12. Beginning in the fall of 2016 and continuing into 2017, I started seeing various posts and images on social media from customers of Rearz and Cooshie Tooshiez. These posts showed that Cooshie was selling APD branded diapers as an America distributor for Rearz, which had a manufacturing defect where the APD trademarked and

2

copyrighted images were the incorrect, peach color opposed to the pink that it was supposed to be. As stated above and based on my personal quality control measures I know that these discolored products were from the batch of diapers printed by Mimosa that I had rejected on behalf of APD and which were not to be sold in commerce.

13. The multiple social media posts stating that the customers had purchased APD diapers from Cooshie as a Rearz distributor also stated that the customers were confused as to why Cooshie/Rearz were selling our diapers as part of their Mystery Boxes. We previously disclosed screenshots of some of these comments from consumers.

14. In fall 2017, APD began receiving multiple telephone calls and emails from retail stores stating that these stores were buying APD goods and that they wanted to buy directly from APD instead for better deals.

15. APD lost business from approximately Feb 2016 to Feb 2018 because, during this time, customers were buying APD products from other suppliers and not through APD's own sales channels.

16. I noticed a large drop in the APD sales figures beginning in 2017. This clearly related to the diapers Rearz had purchased from Mimosa and was then reselling in America through Cooshie, since no other changes to our business had happened at that time. The immediate drop in sales at this time was about $80,000. Our damages have increased each day from this point because of loss of repeat business from customers that we used to have.

17. Each diaper sold by Plaintiff sells for approximately $2.00 a piece, and it is believed that Rearz purchased 80,000 diapers from Mimosa. This creates a loss of $160,000 by Plaintiff because of Rearz' actions. This also damages repeat business since these products are consumables. We have lost, and continue to lose repeat and future business. At this time it is unknown how many of these diapers Rearz sold in America through Cooshie as a distributor, but it is known that at least some of these diapers were sold to consumers in America through Cooshie.

18. Other than Rearz buying our products without out permission and then selling them through its downstream channels like through Cooshie, these two entities have also undercut our pricing by selling our own products for less than market value, sold defective diapers to customers and caused product confusion by selling our diapers as a part of various mystery boxes with our competitors. All of these actions have damaged us with regard to sales and through harming our goodwill because customers have called and/or emailed us to complain about poorly performing diapers within the mystery boxes. This damaged our reputation and made us lose repeat customers.

3

19. From approximately April 2016 to Jan 2017 and due to the products that Rearz purchased and sold through Cooshie, APD had production downtime of our products for about six to ten months until the time APD was able to structure a new contractual relationship with a new diaper factory in China.   This downtime came from Rearz ruining APD's relationship with Mimosa Factory.

20. Both ASC and APD have, at all times, had the same management team made up of my family members and myself and were simply a predecessor and successor in corporate form for one another.

21. On January 26, 2018 ASC assigned all rights it had in the intellectual property and goodwill of its diapers as well as the actual units of products possessed by ASC to APD through a valid assignment.

22. Between our two corporate entities, ASC and APD, there was never any downtime in production or sales of our trademarked and copyrighted diapers other than the brief time in production caused by Rearz buying our products from Mimosa.

23. Over time, various web searches have showed ASC and APD protected designs and names associated with Cooshie as an American distributor for Rearz.

24. Also, it is known from Cooshie's website that Rearz is its supplier from Canada and that Cooshie has an exclusive relationship with Rearz.

25. Finally, our own customer statements on various websites linked to Cooshie and in emails to us, demonstrate that they purchased our products in the United States from Cooshie as a distributor for Rearz as parts of Rearz mystery boxes and that they wondered why our products were sold in mystery boxes through Cooshie and Rearz.

26. I declare under penalty of perjury that the foregoing is true and accurate.

_____
Steve Pandi

State of Nevada
County of Clark

SUBSCRIBED AND SWORN to before me, the undersigned notary public, this 15 day of July 2019, ~~2010~~ by steve Pandi

_____
Notary Public

My Commission Expires: May 20, 2020

XIANG AO
Notary Public - State of Nevada
County of Clark
APPT. NO. 16-2659-1
My App. Expires May 20, 2020

4

# EXHIBIT 2

Google   Tooshie Cooshie

Q All   ⦷ Shopping   ⌂ Images   ▷ Videos   ▦ News   ⋮ More          Settings   Tools

About 4,910 results (0.35 seconds)

USA Source for Rearz Brand Adult Diapers
https://www.cooshietooshiez.com/ ▾
Rearz Brand Distributor in the USA of Rearz Disposables, Pacifiers, & Onsies serving the ABDL
community.

Diapers                          clothing
Rearz Brand Adult Diapers, Onesies &    Waiting... Home > CLOTHING. Sort By:
Pacifiers and More ...            Price: Low to High, Price ...

SALE                             Visit Wearing Clouds for ...
(3). Princess Pink Onesie. FREE   Home > DIAPERS >. Visit Wearing
SHIPPING $36.99. Sale Price ...   Clouds for Samples. Wearing ...

About Us                         Rearz Barn Yard Onesie
Those not familiar with the ABDL   Home > CLOTHING >. Rearz Barn Yard
community and what that means ...   Onesie. Rearz Barn Yard ...

More results from cooshietooshiez.com »

Cooshie Tooshiez (@CooshieTooshiez) | Twitter

**EXHIBIT 3**



all AT&T LTE          1:54 PM          ◁ ■

Q 🔒 cooshie tooshiez rearz american distributor

# Coosie Tooshiez.com - Rearz
# American Distributor



We're turning **2**

**Happy Birthday !!!!!**

We have a gift for you!
Memberships are 50% off
All Diapers In Stock on Sale.
Pre-Order on Lil Monsters
is available now!
+Enter to win a Bag of Lil Monsters

winner drawn May 2nd. Sale Ends May 1st

*Rearz*.ca
the Diaper Authority

 Storgram            ⋮

## abdlproducts - Instagram stories, photos and videos

Images may be subject to copyright. Learn More

Related images



  New Jammies & Onesies!
Polo Onesies

# EXHIBIT 4

**ASC/APD customer Care** <support@aawesome.com>

to Cassie ▾

Jan 16, 2018, 11:58 AM

Dear Cassie,

Thank you kindly for bringing this matter to our attention. We can advise that REARZ is not an authorized or licensed seller to carry, or distribute our brand. We suspect that this is a cheap knock off sold in bulk pack, and we will now be reviewing this matter in greater detail.

Sincerely,

ASC TEAM

...

2 Attachments

Order Comment:

ATT00001.txt

---

**Cassie Halverson** <kjra722!@hotmail.com>

to me ▾

Jan 16, 2018, 6:18 PM

**ASC/APD customer Care**

Jan 16, 2018, 11:58 AM

It was ordered from Rearz, which is my usual brand. It was part of a "close out discontinued item" box, which brought the 6 bag box price from US $130/ish down t

I didn't intend to cause so much trouble for you guys, or them for that matter... I also hope I don't get Rearz upset with me for bringing this to your knowledge.

But I'd definitely like to know how a store could sell a product without getting it from the supplier. That seems very odd... I don't know how to tell if it's a knock off or not. Would photos of the bags and logo help?

I guess it would make sense that the product wouldn't work if they were fake.

Thanks again for your help.

CJ

AT&T LTE    4:45 AM    78%

‹    **somethingpurpul**    ···



♡  ○  ◁                                        ▢

Liked by **abdl.cutietushy** and **141 others**

**somethingpurpul** Me wanted skull diapees
when I first say them, like first goth friendly
diaper!  Dada made the wish come true and
I got these for special occasions now, or
when I wanna be the black frilled Loli
bopping the birthday massacre as I walk
through town in these bad boys. Also they
sent me a awwsocuteinc diapee which I've
never worn before so whoever you are
mister packager at rearz, good looking out
🤍 🤍 🙏  @boy_lolita be jelly! Maybe you
can haves one x3 🤍

☠️

☠️

🤍



somethingpurpul



Liked by **abdl.cutietushy** and **141 others**

**somethingpurpul** Me wanted skull diapees when I first say them, like first goth friendly diaper!  Dada made the wish come true and I got these for special occasions now, or when I wanna be the black frilled Loli bopping the birthday massacre as I walk through town in these bad boys. Also they sent me a awwsocuteinc diapee which I've never worn before so whoever you are mister packager at rearz, good looking out 🖤🖤🙏 @boy_lolita be jelly! Maybe you can haves one x3 🖤



🖤

#abdl #diaper #diapergirl #babygirl #lolita #goth #transgirl #transgender #hrt #mtf #ageregression #regression #ageplay #legallittlesleague #infantilism #diaperdays #stuffy #stuffies #kawaii #kowaii

‹   **somethingpurpul**    ⓘ

August 12, 2017 at 5:40 PM

Hello
Just saw your post about receiving some Aww So Cute pink diapers from Rears, can you please let us know how  rearz sent you our product ?

Thank you so much

 *rolls eyes*

 Write a message...



Liked by **ageplayallday**, **prince.tommy** and **565 others**

**littlefantasyabdl** Rearz store!
#abdl #abdlgirl #diapergirl #abdlbaby

APD000012

## Photo



**tgdiapergirl** Turns out @rearzinc stocks @awwsocuteinc diapers and that makes me happy

**awwsocuteinc** @rears inc Do they ???

**awwsocuteinc** @rearzinc Do they ??? We shall have to follow that claim up

3 HOURS AGO

# EXHIBIT 5

CONFIDENTIAL - SUBJECT
TO PROTECTIVE ORDER

# Shandong Mimosa Hygienic Technology Co. Ltd.

## SALES  CONTRACT

S/C No.:ADS-001

DATE：2014-12-01

SELLER: **Shandong Mimosa Hygienic Technology Co. ltd.**
No.288 Xinchang Road, Changle Weifang City, Shandong Province, China 262400
Tel: +86 536 8958291  Fax: +86 536 8055955

BUYER:  **AWW SO CUTE**

兹经双方同意，按下列条款达成 如下交易：
The Seller and the Buyer have agreed to close the following transactions according to the following conditions stipulated below:
1、商 品：/ Commodity:

| 商品名称<br>Commodity | 尺寸<br>Size | 规格<br>Specification | 单 价<br>Unit Price | 数 量<br>Quantity | 金 额<br>Amount | |
|---|---|---|---|---|---|---|
| | | | | | FOB | CIF |
| Adult Diaper | M<br>840*640mm | 160g/pcs;<br>absorption<br>2000ml | FOB $0.406;<br>CIF  $0.469 | 20000PCS; | $8120 | $9380 |
| Adult Diaper | L<br>960*800mm | 180g/pcs;<br>absorption<br>2000ml | FOB $0.465;<br>CIF   $0.536 | 20000PCS; | $ 9300 | $10720 |
| Adult Diaper | XL<br>1010*840mm | 190g/pcs;<br>absorption<br>2000ml | FOB $0.489;<br>CIF   $0.562 | 30000PCS | $14670 | $16860 |
| | | | 总计 / TOTAL: | 70000PCS | $32090 | 3 0 | $36960 3 6 9 6 0 |
| PS:For each order, we get 30% deposit after confirming the order.<br> Delivery date: 30days after confirming the order, about 45 days for the first time. | | | | 30% Deposit | $9627 | 9 2 | $11088 1 1 0 8 8 |

2、包 装：里层：印刷透明包装袋；  外层：5层纸箱
Packing：inner package: printed transparent bag; outer package: five layer carton
3、唛 头：无
   Shipping mark ：N/M
4、装 运：
   Shipment:
   装货/shipping port：Qingdao Port  目的港/destination port：PHONIEX  Port
   分批装运不允许，转船不允许Partial  shipment is not allowed ,Transshipment is not allowed
5、付 款：
   Payment: FOB/CIF
   T/T 30%DEPOSIT; T/T 70%BALANCE AFTER GETTING THE COPY OF B/L
6. 不可抗力：

CONFIDENTIAL - SUBJECT
TO PROTECTIVE ORDER

Force Majeure:

如由于战争、地震、水灾、火灾、暴风雨、雪灾或其他不可抗力的原因，致使卖方不能全部或部分装运或延期装运合同货物，卖方对这种不能装运或延期装运本合同货物不负有责任。卖方须于7天内用传真通知买方。

The sellers shall not be held responsible for late delivery or non-delivery for all or part of the contracted goods owing to such Force Majeure causes as war, earthquake, flood, conflagration, rainstorm and snowstorm. However, in such a case, the sellers shall inform the buyers by fax within 7 days after force majeure happened.

7. 异议与索赔：

Discrepancy and Claim:

货物到达目的地后，买方若对货物的质量/数量/重量有异议，应在货物到达目的地后30天内凭卖方承认的公众鉴定人出具的检验证明向卖方提出，否则卖方将不承担责任。对由不可抗力造成的损失，或属于承运人或保险人责任范围内的，卖方不予赔偿。

In case any discrepancy on quality/quantity/weight of the goods is found by the Buyers after the goods arrive at the port of destination, claim which should be loaded with the Sellers within 30 days after the goods arrive at the port of destination, otherwise the sellers will not undertake the responsibility. However, the Sellers shall not be held responsible either for compensation of loss (es) due to natural cause (s) or for that (those) within the responsibility of the Ship owners or Underwriters.

8. 货物损坏和质量问题赔偿

Compensation on Damage or Faulty and Sub-standard Article

a)由于运输造成的产品质量问题

  Damage caused by shipping

买家应向保险公司索赔

Buyer shall claim from responsible insurance company.

b)由生产商造成的产品质量问题

  Defective article caused by manufacturing fault

卖家需在下次订单中更换相同产品

Seller shall replace the same at next shipment.

因产品质量不合格和产品或包装损坏，造成经销商拒绝采购的一旦接到书面的退货授权书，供应商将承担退货的运费成本。

Damage article refer to the low quality of products and /or package, which is not acceptable for distribution in Market. Seller shall pay shipping cost on returned articles once return authorization has been given in writing.

当买家与供应商贸易关系终止后，供应商需以美元形式对损坏货物进行赔偿。

Seller will return the cost of damage articles to buyer in USD  currency when Buyer terminate business relationship with Seller.

注意：关于损坏的产品

Remark: About the damage products.

为避免任何由于过失和不合标准的产品引起的投诉，买家应寄给供应商有质量问题的产品样品，告知详细信息。供应商进行相应的替换和赔偿。

In case of any complaint regarding faulty and sub-standard articles, Buyer  should send samples of sub-standard articles with detail information to Seller. After having test report, Seller undertake to replace and or compensate Buyer accordingly.

9. 检查

Inspection

买家可以亲自或者请监督机构监督买家产品的生产线。

Buyer appropriately can inspect buyer's production line by themselves or inspection company.

经过监督检查的产品，即被认定为买家对产品质量无异议。

The products can be considered the buyer accept the quality of goods once buyer or inspection company inspected.

11,材料更改

Material Change

CONFIDENTIAL - SUBJECT
TO PROTECTIVE ORDER

未经买方同意，卖方不得更改任何材料

Seller can not change any material without notice to Buyer.

如果卖方有任何理由需要更改材料，须将样品或数据及时通知买方。

Seller has to send the sample or data to Buyer if Seller want to change the material with a right reason.

10.装运时间

Shipping Date

除正当理由或遇不可抗力因素，卖方不得拖延船期，若有拖延，卖方需尽快通知买方。

Seller can not delay shipment without right reason or Force Majeure. In case of delay of shipment Seller has to inform it ASAP.

11. 仲裁：

Arbitration:

凡因执行本合同所发生的或与本合同有关的一切争议，双方应通过协商解决；如果协商不能解决，应提交北京中国国际经济贸易仲裁委员会，根据该会的仲裁规则进行仲裁。仲裁裁决是最终的，对双方都有约束力。仲裁费用除仲裁机构另有规定外，均由败诉方承担。

Any dispute arising from the execution of, or in connection with, this Contract shall be settled through Arbitration Commission of China, for settlement by arbitration in accordance with the Commission's Provisional Rules of Procedures. The award and decision made by the Commission shall be final and binding on both parties. The arbitration charges, unless otherwise stipulated by the arbitration unit, shall all be born by the party losing the lawsuit.

12. 本合同以中文和英文两种文字书就，两种文字的条款具有同等效力。

This contract is issued in both Chinese and English, the clauses in which have the same effects.

13. 其他条款/Other Terms:

BANK INFORMATION:

Industrial&Commercial Bank of China, Weifang City Branch

Adress: 751A WEIZHOU ROAD WEIFANG CITY, SHANDONG PROVINCIAL CHINA

SWIFT CODE: ICBKCNBJWFG

14. Account: 1607009129200027537

请签署后退回一份，供我方存档。/Please sign and return one copy for our file.

卖 方:

Seller:

买 方:

Buyer: